United States Court of Appeals
For the First Circuit

No. 93-1699

NORTHEAST DORAN, INC.,

Plaintiff, Appellant,

v.

KEY BANK OF MAINE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Torruella, Selya, and Stahl,

Circuit Judges.

Alfred C. Frawley with whom Peter D. Lowe and Brann & Isaacson

were on brief for appellant.
David B. Van Slyke with whom Michael Kaplan, Jonathan S. Piper,

and Preti, Flaherty, Beliveau & Pachios were on brief for appellee.

January 28, 1994

STAHL, Circuit Judge. In its complaint, Northeast

Doran, Inc. ("Doran") alleged that Key Bank of Maine ("Key"),

mortgagee and subsequent vendor of the property at issue, was

liable for clean-up costs under the Comprehensive

Environmental Response, Compensation and Liability Act

("CERCLA"), as amended by the Superfund Amendments and

Reauthorization Act of 1986 ("SARA"). The district court

dismissed the complaint for failure to state a claim,

reasoning that Key's knowledge of potential contamination did

not render it liable under CERCLA. We affirm.

I.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

In December 1989, Ed Harmon & Sons, Inc. ("Harmon")

purchased property located at the Skowhegan Industrial Park

in Skowhegan, Maine ("the property"). The purchase was

financed with a mortgage from Key Bank. In June of 1990,

Doran leased the property from Harmon.

In July of 1991, with Harmon unable to meet its

mortgage payments, Key Bank sought and received a Judgment of

Foreclosure and Order of Sale from the Superior Court of the

State of Maine and made plans to auction the property. On

October 21, 1991, Key hired an independent consultant to

conduct a Maine Superlien Site Assessment ("the assessment")

of the property. Two weeks later, on November 7, 1991,

without having received the results of the assessment, Key

-2-
2

completed its disclosure statement for use in the auction

prospectus. Key stated in that document that it had no

knowledge of any hazardous materials on the property.

On November 18, 1991, Key received the results of

the assessment, which showed potential groundwater

contamination on the property. Key took no steps to make the

results of the assessment known to bidders prior to the

auction.

At the auction on November 21, 1991, Doran, who

remained in possession of the property, entered the highest

bid and signed a purchase and sale agreement for the

property. When Doran sought financing from Key for its

purchase of the property, Key refused, citing for the first

time the result of the assessment. Doran, apparently able to

obtain other financing, purchased the property from Key via

quitclaim deed on December 17, 1991.

After purchasing the property, Doran notified the

Maine Department of Environmental Protection ("DEP") of

potential contamination on the property. DEP assessed costs

against Doran, the "owner" of the property under CERCLA.

Doran brought an action in the United States District Court

for the District of Maine, seeking a declaratory judgment

that Key was liable for clean-up costs on the property.

Among other things, Doran argued that Key, unlike similarly

situated secured creditors, was not entitled to CERCLA's

-3-
3

"security interest holder" exemption and that a right of

action existed due to Key's knowledge of potential

contamination prior to and at the time of sale. The district

court dismissed Doran's complaint for failure to state a

claim upon which relief could be granted, finding that Key

was not a liable party under CERCLA and its relevant

amendments. We affirm.

II.

DISCUSSION

"We review a Rule 12(b)(6) dismissal de novo,

crediting all allegations in the complaint and drawing all

reasonable inferences favorable to the plaintiff." Heno v.

FDIC, 996 F.2d 429, 430 (1st Cir. 1993); see also Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).

Our analysis begins with CERCLA's definition of

liable parties. CERCLA, 42 U.S.C. 9607(a), provides that

liability for environmental clean-up shall attach, inter

alia, to:

(1) the owner and operator of a vessel or
a facility,

(2) any person who at the time of
disposal of any hazardous substance owned
or operated any facility at which such
hazardous substances were disposed of . .
. .

While Key, having obtained a judgment of

foreclosure on the property, might appear at first glance to

be an "owner" or "operator" of the property for purposes of

-4-
4

section 9607(a), CERCLA's definition provisions clearly

dictate otherwise. Under 42 U.S.C. 9601(20)(A), the terms

"owner" or "operator" "do not include a person, who, without

participating in the management of a vessel or facility,

holds indicia of ownership primarily to protect his security

interest in the vessel or facility." As we recently stated

in Waterville Indus., Inc. v. Finance Auth. of Maine, 984

F.2d 549, 552 (1st Cir. 1993), "the purpose of the statutory

exception, apparent from its language and statutory context,

is to shield from liability those `owners' who are in essence

lenders holding title to the property as security for the

debt." Moreover, "[s]o long as the [security interest

holder] makes a reasonably prompt effort to divest itself of

its unwelcome ownership, we think continued coverage under

the exception serves its basic policy: to protect bona fide

lenders and to avoid imposing liability on owners who are not

in fact seeking to profit from the investment opportunity

normally presented by prolonged ownership." Id. at 553.

Doran does not allege, nor could it on the record,

that Key's effort to divest itself of title to the property

was anything less than "reasonably prompt." Id. More

importantly, in support of its allegation that Key held the

property for a purpose other than as security for its

mortgage on the property, Doran cites only the existence of

the assessment, and Key's withholding of its results.

-5-
5

Standing alone, however, the existence of a site assessment,

even one which reveals the existence of possible

environmental contamination and which is concealed from the

eventual purchaser, is insufficient to remove a holder from

the "security interest holder" exception in section

9601(20)(A). See Waterville Indus., 984 F.2d at 554 (holding

that security interest holder exception in section

9601(20)(A) applied despite fact that security holder sold

the property "without making full disclosure of the hazardous

wastes or of notices of violation sent to [the security

interest holder]"); see also United States v. McLamb, 5 F.3d

69, 70-74 (4th Cir. 1993) (similar, where security interest

holder "learned of the previous oil spill at [property] after

the foreclosure but prior to selling the property").1

Accordingly, Doran's complaint fails to allege any set of

facts under which Key could be liable under CERCLA.

Doran also argues that the security interest

exception should not apply in view of 42 U.S.C.

1. Recent regulations promulgated by the United States
Environmental Protection Agency (EPA), though prospective and
not dispositive in the instant case, also indicate that
security interest holders do not compromise their eligibility
for section 9601(20)(A) status by conducting environmental
audits. See 40 C.F.R. 300.1100; Final Rule on Lender

Liability Under CERCLA, 57 Fed. Reg. 18,344, 18,353 (Apr. 29,
1992). See also McLamb, 5 F.3d at 73 & n.8; Waterville

Indus., 984 F.2d at 553 & n.6.

-6-
6

9601(35)(C),2 which holds liable those defendants who

"owned" and then transferred property with "actual knowledge"

of contamination. As noted above, however, Key was never an

"owner" as that term is defined by CERCLA. See supra at pp.

4-6. Nor do we find any support for Doran's argument that

section 9601(35)(C) somehow renders liable parties who would

otherwise fall under the security interest holder exception

of section 9601(20)(A).3 Thus, we find no means for

applying section 9601(35)(C) to Key.

2. Section 9601(35) provides:

Nothing in this paragraph or in section
9607(b)(3) of this title shall diminish
the liability of any previous owner or
operator of such facility who would
otherwise be liable under this chapter.
Notwithstanding this paragraph, if the
defendant obtained actual knowledge of
the release or threatened release of a
hazardous substance at such facility when
the defendant owned the real property and
then subsequently transferred ownership
of the property to another person without
disclosing such knowledge, such defendant
shall be treated as liable under section
9607(a)(1) of this title and no defense
under section 9607(b)(3) of this title
shall be available to such defendant.

3. Rather, the cases cited by Doran apply section
9601(35)(C) solely to parties who were otherwise "owners"
under section 9607(a). See, e.g., Westwood Pharmaceuticals,

Inc. v. National Fuel Gas Distrib. Corp., 964 F.2d 85, 90-91

(2nd Cir. 1992) (holding that section 9601(35)(C) applies to
"owners" under both sub-section (1) and sub-section (2) of
section 9607(a)); see also Fallowfield Dev. Corp. v. Strunk,

1993 WL 157723, *5 (E.D. Pa.) ("In order for [plaintiff] to
establish its prima facie case . . . it must prove that
[defendants] are within one of the [four] classes of persons
subject to liability under section 9607(a).").

-7-
7

In sum, here, as in Waterville Indus., 984 F.2d at

554, the right of contribution is a statutory one that turns

solely on Key's status as an "owner," a status defeated by

the security interest exception. Any other claims which

Doran may have against Key are appropriately brought in

another forum. Cf. id.; McLamb, 5 F.3d at 73-74 (finding no

requirement of "commercial reasonableness" under CERCLA).

III.

CONCLUSION

For the foregoing reasons, the order of the

district court dismissing Doran's complaint for failure to

state a claim is

Affirmed.

-8-
8