Norbert M. FERREIRA, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, in its Capacity as Liquidat-
ing Agent/Receiver for Lowell Institu-
tion for Savings, Defendants.

Civ. A. No. 94–11062–RCL.

United States District Court,
D. Massachusetts.

Sept. 21, 1995.

Henry A. Follen, Jr., Boston, MA, for
plaintiff.

Paul M. Tyrrell, FDIC, Westborough, MA,
for defendants.

### ORDER

LINDSAY, District Judge.

Report and Recommendation *Accepted.*

***REPORT AND RECOMMENDATION RE:
DEFENDANT FEDERAL DEPOSIT
INSURANCE CORPORATION'S, IN
ITS CAPACITY AS LIQUIDATING
AGENT/RECEIVER FOR LOWELL
INSTITUTION FOR SAVINGS, MO-
TION TO DISMISS PLAINTIFF'S
COMPLAINT (DOCKET ENTRY # 3)***

BOWLER, United States Magistrate
Judge.

Defendant Federal Deposit Insurance Cor-
poration ("FDIC"), in its capacity as Liqui-

dating Agent and Receiver of the Lowell Institution for Savings, filed a motion to dismiss. (Docket Entry # 3). Plaintiff Norbert M. Ferreira ("plaintiff") opposes dismissal. (Docket Entry # 9). After conducting a hearing (Docket Entry # 4), this court took the motion to dismiss (Docket Entry # 3) under advisement.

## BACKGROUND

The instant litigation arises out of a dispute regarding a purchase and sale agreement. Under the agreement, the FDIC agreed to sell plaintiff certain real estate located at 115–117 Hampson Street in Dracut, Massachusetts and described as the Starlite Package Store ("the property") together "with existing liquor license" for a purchase price of $30,000 and a $1,500 deposit.

The liquor license was formerly an asset of the Lowell Institution for Savings ("Lowell"). The FDIC acquired the asset pursuant to its appointment as Liquidating Agent of Lowell. (Docket Entry # 2, Complaint, ¶ 5). It is therefore reasonable to assume that the FDIC similarly acquired the property in its capacity as Liquidating Agent of Lowell.

In April 1993, the FDIC, in its capacity as Liquidating Agent of Lowell, entered into the purchase and sale agreement with plaintiff. The parties set June 14, 1993, as the closing date and thereafter extended the date by written agreement to August 17, 1993. The parties could cancel, modify or amend the purchase and sale agreement only by written instrument. Both the purchase and sale agreement and the amendment extending the closing date provided that time was of the essence.[1]

The purchase and sale agreement expressly insulated the FDIC from recourse by plaintiff in the event the FDIC failed to convey title or deliver possession of the property in conformity with the terms of the purchase and sale agreement. The FDIC's primary obligation in the event it failed to deliver the property as promised was to re-

turn plaintiff's $1,500 deposit. The pertinent paragraphs are as follows:

7. If the Seller shall be unable to convey title or to deliver possession of the Premises, all as herein stipulated, or if at the time of delivery of the deed the Premises do not conform with the provisions hereof, then the Deposit shall be forthwith refunded and all other obligations of the parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto, unless the Seller, at its sole option and in its sole discretion, elects to attempt to remove any defects in title or to deliver possession as provided herein or to make the Premises conform to the provisions hereof, as the case may be, in which event the Closing Date shall be extended for a period of thirty days.

8. If at the expiration of the extended time the Seller shall have failed so to remove any defects in title, deliver possession, or make the Premises conform, as the case may be, then the Deposit shall be forthwith refunded and all other obligations of the parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto.

(Docket Entry # 2, Complaint, Ex. A).

On August 16, 1993, plaintiff's counsel transmitted a facsimile to the FDIC requesting an extension of the August 17, 1993 closing date. The facsimile transmission additionally noted that plaintiff's counsel was "in the process of completing the parts of the application for the liquor license transfer which pertain to [his] client." (Docket Entry # 2, Complaint, Ex. B). By facsimile transmission of August 16, 1993, the FDIC stated it would not agree to extend the closing date and was prepared to deliver the deed to the property the following day. (Docket Entry # 2, Complaint, ¶ 9 & Ex. C).

On August 17, 1993, the FDIC, although able to deliver the deed to the property, was unable to deliver the liquor license.[2] Consequently, the parties did not consummate the

---

1. The complaint notes that the FDIC made no effort to prepare an application for the transfer of the liquor license thereby violating its obligations under the purchase and sale agreement.

2. The FDIC acknowledges that it thereby "failed to perform under the Agreement." (Docket Entry # 4, p. 3). It further alleges, however, that it returned the $1,500 security deposit to plaintiff.

transfer of the property. Thereafter, plaintiff's counsel prepared an application to transfer the liquor license from the FDIC to plaintiff in consideration of the FDIC agreeing to extend the closing date to October 30, 1993. The FDIC declined to execute a further extension of the closing date.

Plaintiff's three count complaint seeks relief due to the FDIC's breach of the purchase and sale agreement (Count II) and the FDIC's breach of the covenant of good faith and fair dealing (Count III). Whereas counts II and III request damages, Count I, entitled Specific Performance, requests that this court order the FDIC to specifically perform the purchase and sale agreement and convey the property and liquor license to plaintiff. In particular, Count I asks for a court order enjoining the FDIC from selling or transferring the property and the liquor license to any third party. Count I also requests a court order commanding the FDIC to convey the property to plaintiff together with the liquor license.

Originally, the FDIC sought to dismiss all three counts in the complaint on the basis of plaintiff's failure to exhaust administrative remedies. The FDIC withdrew this argument with respect to all three counts at the hearing on the motion to dismiss.[3]

The FDIC's remaining arguments all pertain to plaintiff's requested relief for specific performance. The FDIC argues that 12 U.S.C. § 1821(j) ("section 1821(j)") precludes this court from ordering specific performance. The FDIC also asserts that plaintiff waived his right to seek specific performance pursuant to the aforementioned language in paragraph eight of the purchase and sale agreement. Finally, the FDIC submits that plaintiff cannot demand specific performance due to the expiration of the purchase and sale agreement. (Docket Entry # 4).

Plaintiff maintains that damages constitute an inadequate remedy with respect to the FDIC's breach of a contract to sell real estate. Plaintiff asserts that the FDIC cannot enter into a contract for the sale of real estate and then proceed to breach the agreement without remedying the breach through specific performance of the purchase and sale agreement. (Docket Entry # 9).

## DISCUSSION

 Turning to the FDIC's argument with respect to section 1821(j), this section of FIRREA[4] places a limitation on the actions of a district court. The section reads as follows:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, *to restrain or affect the exercise of powers or functions* [emphasis added] of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j). In a similar manner, section 1821(d)(13)(C) provides that, "No attachment or execution may issue by any court upon assets in the possession of the receiver." 12 U.S.C. § 1821(d)(13)(C).

 The FDIC's powers, referred to in section 1821(j), include the "power to place the insured depository institution in liquidation and proceed to realize upon all the assets of the institution." 12 U.S.C. § 1821(d)(2)(E). The FDIC also "has the power as receiver to foreclose on the property of the debtor," *Lloyd v. FDIC*, 22 F.3d 335, 336 (1st Cir.1994) (holding that district court lacks jurisdiction to restrain FDIC from proceeding with foreclosure), and " 'to transfer any asset or liability of the institution.' " *Sunshine Development, Inc. v. FDIC*, 33 F.3d 106, 112 (1st Cir.1994) (quoting 12 U.S.C. § 1821(d)(2)(G)(i)(II) and finding that ordinarily district court lacks authority to enjoin FDIC from foreclosing on the security it holds pursuant to section 1821(j)).

 Congress enacted section 1821(j) as "a broad limit on the power of the courts to interfere with the FDIC's efforts" in preserving and consolidating the assets of failed institutions. *Telematics International, Inc. v. NEMLC Leasing Corporation*, 967 F.2d 703, 705 (1st Cir.1992). Section 1821(j)

---

3. Because the FDIC's withdrawn argument raises a jurisdictional issue, the FDIC is not foreclosed from reasserting this argument at a later date.

4. FIRREA is an acronym for the Financial Institutions Reform and Recovery Enforcement Act.

thereby operates to deprive the district court of " 'jurisdiction to enjoin the FDIC when the FDIC is acting pursuant to its statutory powers as receiver.' " *Lloyd v. FDIC,* 22 F.3d at 336 (quoting *Telematics International, Inc. v. NEMLC Leasing Corporation,* 967 F.2d at 707).

The FDIC acquired the property as an asset of a failed institution. Thereafter, the FDIC entered into and possibly breached a contract with plaintiff to sell plaintiff the property. Counts II and III for breach of contract and breach of the duty of good faith and fair dealing survive dismissal inasmuch as these counts both seek compensatory relief in the form of damages.

Restraining the FDIC from proceeding with its statutory power to foreclose on the property and/or to convey the property to a third party, however, affects the FDIC in the exercise of its powers as receiver to collect monies and to realize upon the assets of Lowell. *See Telematics International, Inc. v. NEMLC Leasing Corporation,* 967 F.2d at 705–706 (allowing the plaintiff "to enjoin the FDIC would clearly restrain or affect the FDIC in the exercise of its powers as receiver to collect moneys due and to realize upon the assets" of the failed institution). This court therefore lacks the power to award plaintiff the relief he requests in Count I which seeks the specific performance of the purchase and sale agreement and the conveyance of the property and liquor license for the $30,000 purchase price. *See, e.g., Heno v. FDIC,* 815 F.Supp. 507, 509–510 (D.Mass.) (section 1821(j) prohibits court from enjoining FDIC from foreclosing on property), *aff'd in part, vacated in part and remanded,* 996 F.2d 429, 432 n. 6 (1st Cir.1993) (affirming dismissal of injunctive relief as barred by section 1821(j)), *withdrawn,* 20 F.3d 1204, 1208 n. 8 (1st Cir.1994) (withdrawing original panel's opinion but affirming denial of injunc-

tive relief as barred under section 1821(j)). Other courts arrive at similar conclusions. *See Sweeney v. Resolution Trust Corporation,* 16 F.3d 1, 6 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994) (denying request to prevent RTC [5] from foreclosing on property secured by note owned by failed institution); *Telematics International, Inc. v. NEMLC Leasing Corporation,* 967 F.2d at 706 (section 1821(j) prevents district court from enjoining FDIC from foreclosing on property secured by certificate of deposit issued to failed bank); *Rosa v. Resolution Trust Corporation,* 938 F.2d 383, 397–398 (3rd Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (cited by the court in *Telematics,* 967 F.2d at 705, and finding that section 1821(j) bars district court from requiring RTC to contribute to ERISA [6] retirement plan trustee); *Pageland 29 Limited Partnership v. FDIC,* 1992 WL 391377 at *5 (D.D.C. Dec. 14, 1992) (section 1821(j) bars court from compelling FDIC to fund loan agreement).

Because section 1821(j) bars plaintiff's claim for specific performance in Count I, this court need not address the FDIC's remaining arguments (Docket Entry # 4, pp. 8–11), to wit, that plaintiff waived his right to specific performance and that he lacks a claim for specific performance due to the expiration of the purchase and sale agreement.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS** [7] that the FDIC's motion to dismiss (Docket Entry # 3) be **ALLOWED** to the extent that Count I for specific performance be dismissed.

---

**5.** RTC is an acronym for the Resolution Trust Corporation.

**6.** ERISA is an acronym for the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*

**7.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and

Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States. v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986).