[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS THIRD AND FOURTH COUNTS ASTO FDIC: MOTION FOR JUDGMENT AS TO FDIC: AND MOTION FOR JUDGMENT AGAINSTROBERT A. SCALISE, JR. AND THE FIRM OF ERICSON, SCALISE, MANGAN ZEMBKO
Plaintiffs bring this action against Robert A. Scalise, Jr. (Scalise) and the law firm of Ericson, Scalise, Mangan Zemkroski (Law Firm) for negligence and breach of contract (First and Second Counts).
Plaintiffs also bring this action in two counts against Federal Deposit Insurance Corporation (FDIC), for breach of contract (Third Count) and for unjust enrichment (Fourth Count). FDIC moves to dismiss after trial for failure of plaintiffs to make out a prima facie case.
The parties have entered into the following stipulation:
The plaintiffs, Chicago Title Insurance Company ("CTIC") and Robert M. Colavecchio ("Colavecchio"), and the defendant, Federal Deposit Insurance Corporation as receiver for Landmark Bank ("FDIC"), hereby enter into the within stipulation of facts as to the basis for their respective claims and defenses in this action. Said parties agree that the matters stipulated to herein shall be deemed proven without the presentation of evidence, and that the documents and papers referred to herein shall be received by the Court as exhibits, for the purpose of determining the issues that exist among these parties.
1. Colavecchio is an individual who owns and occupies improved residential real property known as and located at 4 Cherokee Court Cromwell, Connecticut (the "Property").
2. CTIC is a Missouri corporation having an office for the transaction of business within the State of Connecticut at 10 Columbus Boulevard in Hartford, and is in the business of insuring interests in real property.
3. The FDIC is a corporation organized and existing under an CT Page 12914 act of Congress and is a defendant herein in its capacity as receiver of Landmark Bank.
4. Landmark Bank was formerly a state-chartered bank and trust company having its principal place of business at CityPlace II in Hartford, Connecticut.
5. On March 27, 1991, Landmark Bank was the owner of the fee simple title to the Property.
6. Landmark Bank acquired its said title to the Property by foreclosing a second mortgage thereon which had been granted to it by Benjamin O. Kvietkauskas and Karen L. Kvietkauskas; said mortgage secured a note in the original principal amount of $38,100.00 given by the said mortgagors on May 14, 1988 and was recorded on May 23, 1988 at Volume 377, Page 304 of the Cromwell Land Records. A true and genuine copy of said mortgage, and the note secured thereby, is attached hereto as Exhibit A.
7. Landmark Bank acquired its said title on December 20, 1990 pursuant to a judgment of strict foreclosure entered in the Superior Court for the Judicial District of Middlesex at Middletown and, in evidence thereof, recorded a certificate of foreclosure at Volume 452, Page 43 of the Cromwell Land Records. A true and genuine copy of said certificate of foreclosure is attached hereto as Exhibit B.
8. At the time Landmark Bank made its said second mortgage loan and at the time it acquired its title to the Property as aforesaid, it had actual knowledge of the fact that its interest in the Property was subsequent and subordinate to a valid, prior first mortgage on the Property granted to Home Bank and Trust Company by Benjamin O. Kvietkauskas and Karen L. Kvietkauskas on June 13, 1986, which mortgage secured a note of even date in the original principal amount of $63,000.00. The said mortgage, which was recorded on the Cromwell Land Records on June 20, 1986 at Volume 295, Page 186, was subsequently assigned to the BancBoston Mortgage Corporation by written assignment dated June 13, 1986 and recorded on June 20, 1986 at Volume 295, Page 191 of the Cromwell Land Records. True and genuine copies of said mortgage and assignment are attached hereto as Exhibits C and D, respectively. The said mortgage was properly indexed and recorded on the Cromwell Land Records.
9. The foreclosure complaint upon which Landmark Bank CT Page 12915 proceeded to foreclose its mortgage interest in the Property recited both the existence and priority of the mortgage referred to in paragraph 8, above. A true and genuine copy of said complaint is attached hereto as Exhibit E.
10. Subsequent to its acquisition of the title to the Property, Landmark Bank made a payment of $9,984.48 to BancBoston Mortgage Corporation to pay an outstanding arrearage on the mortgage referred to in paragraph 8, above, and agreed to keep said mortgage current until it could sell the Property, as evidenced by its correspondence dated January 16, 1991, a true and genuine copy of which is attached hereto as Exhibit F.
11. On March 27, 1991, Landmark Bank contracted to sell the Property to Colavecchio by written agreement with him. A true and genuine copy of their contract is attached hereto as Exhibit G. At and prior to the time it entered into said contract, Landmark Bank had actual knowledge of the mortgage referred to in paragraph 8, above.
12. Paragraph 10 of said contract set forth the parties' agreement as to the title that Colavecchio was to receive and the manner in which such title was to be conveyed by Landmark Bank.
13. On March 28, 1991, Landmark Bank failed and the FDIC was appointed to act as its receiver.
14. Pursuant to the provisions of 12 U.S.C. § 1821
(d)(2)(A)(i), a copy of which is attached hereto as Exhibit H, the FDIC succeeded to the interest that Landmark Bank had in the Property and in its contract with Colavecchio.
15. Pursuant to the provisions of 12 U.S.C. § 1821
(d)(3)(B), a copy of which is attached hereto as Exhibit I, the FDIC published in The Hartford Courant the prescribed notice warning creditors of Landmark Bank to present their claims against it to the FDIC on or before July 6, 1991 (the claims bar date). A copy of said notice, and The Hartford Courant's affidavit of publication thereof, is attached hereto as Exhibit J.
16. The FDIC did not mail to either of the plaintiffs in this action a notice in accordance with the provisions of12 U.S.C. § 1821(d)(3)(C), a copy of which is attached hereto as Exhibit I. Neither of the plaintiffs utilized the FDIC's claims CT Page 12916 procedures set forth in 18 U.S.C. § 1821(d). In this action, the plaintiffs make no claim to any asset owned by Landmark Bank at the time of its failure.
17. On or about May 7, 1991, the FDIC affirmed the contract made by Landmark Bank and Colavecchio for the purchase and sale of the Property.
18. Closing of title under said contract took place on May 23, 1991.
19. At the closing, the FDIC received from Colavecchio the consideration due for its conveyance and Colavecchio received it deed conveying title to the Property. Copies of the settlement statement for the transaction, the checks delivered to the FDIC or its attorney and the FDIC's deed to Colavecchio are attached hereto as Exhibits K, L and M, respectively.
20. At the closing, Colavecchio was represented by Attorney Robert A. Scalise, Jr. of the law firm of Ericson, Scalise, Mangan Zembko, P.C. and the FDIC was represented by the law firm of Trager Trager. The FDIC's representative at the closing was Alan Merlin, who attended the closing in his capacity as Liquidation Assistant ORE for the FDIC.
21. Colavecchio's attorney examined the title to the Property prior to the closing of title, but negligently failed to discover and report the existence of the mortgage referred to in paragraph 8, above. Accordingly, neither Colavecchio nor his attorney had actual knowledge of said mortgage at the time of closing and both proceeded with the closing in ignorance thereof.
22. Neither the FDIC's attorney, nor its representative at the time of closing, Alan Merlin, had actual knowledge of the mortgage referred to in paragraph 8, above, at the time of closing and both proceeded with the closing in ignorance thereof.
23. The FDIC, prior to the time of closing, had in its possession Landmark's file concerning the Property, which included the papers attached hereto as Exhibits T, U, V, W and X.
24. In connection with the closing of title on May 23, 1991, CTIC issued to Colavecchio and his mortgagee policies of title insurance insuring their respective interests in the Property. Copies of the same are attached hereto as Exhibits Y and Z, CT Page 12917 respectively.
25. CTIC's policies were issued on the basis of the title examination made by Attorney Scalise and referred to in paragraph 21, above, and accordingly, neither policy reported or excepted the interest of the mortgagee referred to in paragraph 8 above. CTIC had no actual knowledge of said mortgagee's interest at the time it issued its policies.
26. In August, 1991, the mortgagee referred to in paragraph 8, above, commenced an action to foreclose its mortgage in the Superior Court for the Judicial District of Middlesex at Middletown. Said action was captioned Bancboston Mortgage v.Landmark Bank, CV-91-0063081 -S. A true and genuine copy of the complaint in said action is attached hereto as Exhibit AA.
27. In May, 1992, Colavecchio was summoned to appear as a party defendant in said action by virtue of the interest he had acquired in the Property from the FDIC. A true and genuine copy of the motion to cite and the Court's order thereon is attached hereto as Exhibit BB.
28. Subsequently, Colavecchio forwarded said papers to Attorney Scalise who, in turn, forwarded them to CTIC and made a claim on Colavecchio's behalf under the policy it had issued to him.
29. Attorney Scalise also wrote to Trager Trager advising of the BancBoston foreclosure and requesting that the problem be resolved so as to avoid injury to Colavecchio. A copy of his correspondence is attached hereto as Exhibit CC.
30. CTIC subsequently investigated the claim made by Attorney Scalise on behalf of Colavecchio, determined that there was no defense to the BancBoston foreclosure and paid the sum of $69,905.46 to satisfy the sums secured by the BancBoston mortgage. Copies of CTIC's checks are attached hereto as Exhibit DD.
This court finds those facts and accepts the exhibits.
Law
 I re Scalise and Law Firm
CT Page 12918
Scalise was negligent in failing to discover and report the prior mortgage of BancBoston.
That negligence was a substantial factor in causing the loss to CTIC in the amount of $69,905.46.
There was no superseding cause of that loss. In addition there is no breach in the chain of causation from Scalise's negligence through CTIC's loss.
Scalise breached his contract with plaintiffs.
The law firm is liable for his negligence and his breach of contract.
II re FDIC
 A. Failure to Exhaust
The federal statute 12 U.S.C. § 1821(d), as amended, requires that a breach of contract claim made against the assets a bank by a creditor of an insolvent bank first be made in an administrative proceeding not against the assets of the Landmark Bank (Bank).
Plaintiffs' claims are for breach of contract and unjust enrichment but plaintiffs were not creditors under that statute or under 12 U.S.C. § 1823(e). Heno v. FDIC, 996 F.2d 429, 433
fn. 10.
"Subsection 1821(e) authorizes claims for compensatory relief for direct loss occasioned by FDIC's repudiation of a pre-receivership contract entered into by the failed financial institution." Heno v. FDIC, 996 F.2d 429, 433. In our situation the bank entered into the contract; FDIC affirmed the contract; and FDIC breached that contract. Thus the plaintiffs need not exhaust any federal remedies under 12 U.S.C. § 1821(d), Henov. FDIC, supra 435; Homeland Stores, Inc. v. Resolution TrustCorp. , 17 F.3d 1269, 1275.
B. Breach of Contract
The contract required the Bank to deliver a title to Colavecchio that was not subject to any mortgage. Neither the Bank nor FDIC delivered such title and thus FDIC breached that CT Page 12919 Contract. The defendants essentially admit the breach but claim it is not actionable because of the claimed failure to exhaust, discussed above, and because of a claimed merger of the contract into the quitclaim deed.
The doctrine of merger is not here applicable because Bank and Scalise made a mistake. The Bank knew there was a mortgage prior in right to its mortgage when it foreclosed and when it made the Contract. FDIC failed to note it in the quitclaim deed — an obvious mistake because the FDIC title was that of the Bank. See Connecticut National Bank v. Chapman, 153 Conn. 393, 395. In addition the evidence is clear that FDIC knew as well.
Equity would never allow a single mistake to injure an innocent party in this way. Lomas Nettleton Co. v. Isacs,101 Conn. 614, 619-621.
C. Unjust Enrichment
The parties agree that if the plaintiffs may prevail on the breach of contract count, because the Contract is enforceable, then they may not prevail on their unjust enrichment claims,Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242,246. (But see Feng v. Dart Hill Realty, Inc., 26 Conn. App. 380,383, cert. denied 223 Conn. 912).
This court has determined that plaintiffs do have a viable breach of contract claim against FDIC. Because such a finding might be in error the court will decide the unjust enrichment claim.
For this claim plaintiffs must allege and prove (1) what the transaction between the parties was[1]; (2) that the defendant benefited from the transaction; (3) that the receipt of some or all of that benefit was unjust in that the defendant did not pay in full for what it received; and (4) that as a result the plaintiff was hurt. Providence Electric Co. v. Sutton Place,Inc., supra 246.
Both Bank and FDIC made innocent mistakes. But FDIC has benefited greatly by its error. CTIC also made an innocent mistake and has been harmed by it. The doctrine of unjust enrichment here applies. Connecticut National Bank v. Chapman, supra 398-399. CT Page 12920
Motion to dismiss is denied.
III Damages and Judgments
 1.
 A. re Scalise and Law Firm
Judgment shall enter for plaintiffs against Scalise and the Law Firm for $69,905.46 plus interest at the rate of 10% per annum from the day after the date of CTIC's payment to satisfy the BancBoston note.
B. re FDIC
 1. Contract
Judgment shall enter for plaintiffs against FDIC for $69,905.46 plus interest at the rate of 10% per annum from the day after the date of CTIC's payment to satisfy the BancBoston note. 12 U.S.C. § 1821(e)(3)(A).
2. Unjust Enrichment
In the event the contract claim fails, the court finds FDIC was unjustly enriched and in its discretion awards plaintiffs $69,905.46 plus interest at the rate of 10% from the day after the date of CTIC's payment to satisfy the BancBoston note and attorney's fees of $6,000. Polverari v. Peatt, 29 Conn. App. 191,206.
N. O'Neill, J.