TELEMATICS INTERNATIONAL, INC., Plaintiff, Appellant,

v.

NEMLC LEASING CORPORATION, et al., Defendants, Appellees.

No. 91–2003.

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1991.

Decided June 22, 1992.

---

Alan R. Hoffman with whom Lynch, Brewer, Hoffman & Sands, Boston, Mass., was on brief, for plaintiff, appellant.

Edward J. O'Meara with whom Ann S. Duross, Richard J. Osterman, Jr., Washington, D.C., John Foskett, Michael P. Ridulfo, Deutsch Williams Brooks DeRensis Holland & Drachman, P.C., Boston, Mass., and Carmen Rodriguez, Franklin, Mass., were on brief, for F.D.I.C.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

LOUIS H. POLLAK, Senior District Judge.

■ This case requires us to address the scope of a federally-created receiver's power to exercise its statutory powers free of judicial interference. We conclude that under 12 U.S.C. § 1821(j), a federal court lacks jurisdiction to enjoin the Federal Deposit Insurance Corporation (FDIC), acting in its role as receiver for a banking institution, from attaching a certificate of deposit in which the banking institution holds a security interest.

## I. Factual and Procedural Background

Underlying this action is an equipment lease that was initially executed in November 1987. The parties to the original lease were NEMLC Leasing Corp. and NEMLC Leasing Associates No. 3 (collectively, NEMLC), as lessors, Digital, Inc., as lessee, and Telematics International, Inc. (Telematics), as manufacturer of the equipment and guarantor of the lessee's performance. In 1990, the parties negotiated an assignment of the lease from Digital, Inc., to Digital Radio Networks Limited Partnership (Digital Radio Networks). Although the parties apparently all agreed to the lease, and all parties acted thereafter as if the assignment was valid, only Telematics executed the assignment agreement.

On May 31, 1991, upon the expiration of the prior security posted by Telematics, Telematics and NEMLC entered into a deposit pledge agreement, pursuant to which, to secure the performance of Digital Radio Networks, Telematics granted NEMLC a security interest in a certificate of deposit, now held at Fleet Bank. On July 11, NEMLC assigned its assets, including the lease, to its parent corporation, the New Bank of New England (NBNE). On the following day, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for NBNE, and thereby succeeded to NBNE's rights, titles, powers, and privileges, including the rights under the lease that NBNE had just acquired from NEMLC. *See* 12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989). On August 12, the FDIC informed Telematics that Digital Radio Networks was in default under the terms of the lease assignment, and that as a result the FDIC intended to foreclose upon the pledged certificate of deposit at Fleet Bank.

---

* Of the Eastern District of Pennsylvania, sitting by designation.

Telematics then initiated the present action in the District Court for the District of Massachusetts, seeking to enjoin the FDIC from foreclosing upon the certificate of deposit. Telematics asserted in its complaint that, as the assignment of the lease to Digital Radio Networks had never been executed by all parties, as was required under the terms of the lease, the assignment was invalid, and thus Telematics' guarantee of Digital Radio Networks' performance through the certificate of deposit was without effect. On Telematics' motion for a preliminary injunction, the district court concluded that under 12 U.S.C. § 1821(j) it lacked jurisdiction to enter an injunction against the FDIC in its capacity as receiver. The present appeal followed.

## II. Legal Analysis

In 1989, Congress passed the Financial Institutions Reform and Recovery Enforcement Act (FIRREA) as a response to the growing crisis in the nation's banking and savings and loan industries. The statute allows the appointment of a federally-created entity, in this case the FDIC, as conservator or receiver of a failing or failed insured institution, for the protection of depositors and creditors of the institution. Section 212 of FIRREA provides the FDIC with broad powers in its roles as conservator and receiver of an insured banking institution. Among those powers are the power to:

(i) take over the assets of and operate the insured depository institution ...;

(ii) collect all obligations and money due the institution;

(iii) perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver; and

(iv) preserve and conserve the assets and property of such institution.

12 U.S.C.A. § 1821(d)(2)(B) (West 1989 & Supp.1992). When the FDIC is acting as receiver, it has the further power to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." 12

U.S.C.A. § 1821(d)(2)(E) (West 1989). To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of the courts to interfere with the FDIC's efforts. Section 1821(j) provides:

Except as provided in this section, no court may take any action, except at the request of the Board of Directors [of the Corporation] by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or as a receiver.

12 U.S.C. § 1821(j) (West 1989). Congress did not leave individuals having claims against the institution without a remedy, however. FIRREA contains an elaborate administrative system by which the FDIC may adjudicate claims against the insured institution. *See* 12 U.S.C.A. § 1821(d)(3)–(11) (West 1989 & Supp.1992). A party whose claim is disallowed by the FDIC may seek administrative review or may pursue legal remedies in the district court. *See* 12 U.S.C.A. § 1821(d)(6)(A) (West 1989).

Telematics does not contend that the FDIC acted outside its statutory powers as receiver when it sought to foreclose upon the certificate of deposit at Fleet Bank. Rather, Telematics argues that the anti-injunction provision of section 1821(j) does not mean what it appears to mean, and that the district court retains jurisdiction to enjoin the FDIC in the exercise of its powers as receiver. We cannot agree. In light of the elaborate structure created by FIRREA, and the evident intent of Congress that the structure should be permitted to stand with minimal court interference, we conclude that section 1821(j) deprived the district court of jurisdiction to enter the injunction that Telematics sought in the present case. *See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397–98 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *281–300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992). Allowing Telematics to enjoin the FDIC would clearly restrain or affect the FDIC in the exercise of its powers as receiver to collect

moneys due and to realize upon the assets of NEMLC. If such an injunction were permissible, creditors would be able to secure judicial review, in advance, of every action that the FDIC proposed to take, regardless of whether that action was clearly within the FDIC's statutory authority. Such judicial interference would dramatically limit the FDIC's ability to exercise its statutory powers efficiently and effectively. Moreover, as the statute provides for expedited administrative review of claims presented to the FDIC, and for judicial review of the resulting administrative determination, precluding injunctions of the type sought here does not leave parties such as Telematics without recourse.

Telematics attempts to avoid the clear implications of section 1821(j) by pursuing a tangled thread through the legislative history of FIRREA and its predecessor statute, the Financial Institutions Supervisory Act of 1966 (FISA). Telematics points to a passage in the legislative history of section 1821(j), which states:

> Finally, the subsection bars courts, to the same extent as the Home Owners' Loan Act does now under existing law, from restraining or affecting the exercise of the powers or functions of the FDIC as conservator or receiver, except at the request of the Board of Directors.

H.R.Rep. No. 54(I), 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 130. The existing law to which the passage refers is the former 12 U.S.C. § 1464(d)(6)(C),[1] which provided:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

Telematics attempts to argue, based on various passages of the legislative history of FISA and references to other provisions within that act, that the former section

1464(d)(6)(C) only prohibited courts from hearing challenges to the appointment of a conservator or receiver. From this, it follows—so Telematics contends—that section 1821(j) likewise only applies to challenges to the appointment of a conservator or receiver and does not deprive the court of jurisdiction to enter injunctions against the FDIC in other instances.

■ We decline to adopt Telematics' interpretation of section 1821(j). Since section 1821(j) nowhere refers in its text to the removal of a conservator or receiver, and indeed entirely omits the reference to removal contained in the former section 1464(d)(6)(D), it is difficult to conceive that Congress truly intended section 1821(j) to apply only to such cases. Moreover, there appears to be little reason to resort to the rather convoluted and ambiguous legislative history of two distinct provisions, enacted more than twenty years apart, to interpret the unambiguous language of section 1821(j). As this court has stated, the task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning. *See Securities Industry Ass'n v. Connolly*, 883 F.2d 1114, 1118 (1st Cir. 1989) (citing *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 833–35, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). Section 1821(d)(2), read broadly, sets forth the powers that FDIC shall possess in its role as conservator or receiver for an insured institution. Section 1821(j) states that, except as otherwise provided, the courts shall lack the power to restrain or affect the FDIC in the exercise of those powers. We do not suggest that legislative history may never have a role in interpreting statutory language, even seemingly clear statutory language. In the present case, however, it is untenable to argue that, despite the structure of section 1821 as a whole and the

---

1. This provision, modified slightly, is now codified at 12 U.S.C.A. § 1464(d)(2)(G) (West Supp. 1992).

clear language of section 1821(j), Congress intended section 1821(j) to have only a very narrow meaning, one nowhere suggested by the explicit language of the statute itself.

Telematics further argues that the decision of the Supreme Court in *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), supports its interpretation of section 1821(j). In *Coit*, the Supreme Court, interpreting the former section 1464(d)(6)(C), concluded that that provision did not bar the district court from hearing in the first instance a creditor's claim against the Federal Savings and Loan Insurance Corporation (FSLIC). *Coit* does not support Telematics' position in the present case, however. In *Coit*, the FSLIC argued that the creditor was required, before seeking a judicial remedy, to pursue its claim through an administrative procedure which FSLIC had established pursuant to its statutory power under FISA "to settle, compromise, or release claims in favor of or against the insured institutions." 12 U.S.C.A. § 1729(d) (repealed). The Court determined that section 1729(d) did not grant the FSLIC the power to insist that creditors follow its administrative procedure, and that therefore permitting the creditor to bypass the administrative procedure and seek a judicial remedy would not restrain or affect the exercise of any of the FSLIC's statutorily-granted powers as conservator or receiver. *See id.* 109 S.Ct. at 1368–69; *see also 281–300 Joint Venture*, 938 F.2d at 39. In so deciding, the Court noted that section 1464(d)(6)(C) appeared to focus primarily on actions to remove the FSLIC from its appointment as conservator or receiver. *See Coit*, 109 S.Ct. at 1369, 1371.

*Coit* is inapposite for two reasons. First, *Coit* simply held that where the FSLIC was acting outside its statutorily-granted powers, the anti-injunction provisions of the former section 1464(d)(6)(C) did

not apply. As was noted above, Telematics does not contend in the present case that the FDIC was acting beyond the scope of its statutory powers; thus, *Coit*, rather than assisting Telematics, actually supports the FDIC's position.[2] Second, to the extent that Telematics relies on *Coit* to bolster its argument that section 1821(j) only applies to actions to remove a conservator or receiver, we have already explained why, in this respect, we do not find section 1821(j) analogous to the former section 1464(d)(6)(C). *Coit*, which made no mention of section 1821(j) (and which, indeed, antedated the adoption of FIRREA by several months), does not provide a basis for adopting Telematics' proposed reading of section 1821(j).

■ Finally, Telematics argues that even if the district court lacked the power to enjoin the FDIC from attaching the certificate of deposit held by Fleet Bank, the court nevertheless maintained the authority to allow Telematics to attach the certificate of deposit. The district court concluded that it lacked such authority, and we agree. Permitting Telematics to attach the certificate of deposit, if that attachment were effective against the FDIC, would have the same effect, from the FDIC's perspective, as directly enjoining the FDIC from attaching the asset. In either event, the district court would restrain or affect the FDIC in the exercise of its powers as receiver. Section 1821(j) prohibits such a result.

■ By holding that the district court lacks jurisdiction to enjoin the FDIC when the FDIC is acting pursuant to its statutory powers as receiver, we do not suggest that the FDIC enjoys blanket immunity from judicial oversight. When the FDIC is clearly acting outside the scope of its statutory powers, the rationale of *Coit* would permit a district court to enjoin the FDIC, provided, of course, that the party seeking the injunction is able to demonstrate that

---

**2.** It is further worth noting that unlike FISA, which merely granted the FSLIC the power "to settle, compromise, or release claims in favor of or against the insured institutions," 12 U.S.C.A. 1729(d) (repealed), FIRREA creates an elabo-

rate structure for administrative review and requires claimants to proceed through that structure before seeking a judicial remedy. *See* 12 U.S.C. § 1821(d)(3)–(13).

the standards for injunctive relief are otherwise met. That rationale, however, is insufficient to overcome the clear language of section 1821(j) in instances where the FDIC does not exceed the bounds of its statutory powers.

Accordingly, we affirm the order of the district court.