UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1936

FLOYD V. HENO,

Plaintiff, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Breyer, Chief Judge,

Campbell, Senior Circuit Judge,

and Cyr, Circuit Judge.

Robert G. Wilson IV, with whom Robert G. Wilson III and Law

Offices of Robert G. Wilson III were on brief for appellant.

Robert R. Pierce, with whom Russell F. Conn and Conn,

Kavanaugh, Rosenthal & Peisch were on brief for appellee.

April 22, 1994

CYR, Circuit Judge. Plaintiff Floyd Heno appeals from
CYR, Circuit Judge.

a district court order dismissing claims for compensatory and

injunctive relief brought against the Federal Deposit Insurance

Corporation ("FDIC") under the Financial Institutions Reform and

Recovery Act ("FIRREA"). In an earlier opinion, see Heno v.

FDIC, 996 F.2d 429 (1st Cir. 1993), we affirmed the district

court order dismissing the claim for injunctive relief pursuant

to Federal Rule of Civil Procedure 12(b)(6), but vacated its Rule

12(b)(1) order dismissing the claim for compensatory relief.

Thereafter, we granted FDIC's petition for panel rehearing on the

claim for compensatory relief, see Fed. R. App. P. 40, and

allowed further briefing, argument, and supplementation of the

appellate record relating to the proper interpretation of FIRREA

1821(d), (e), 12 U.S.C. 1821(d), (e). We now withdraw our

original opinion, and substitute the present opinion.

I

BACKGROUND

A. The "Claim"

We review a Rule 12(b)(6) dismissal de novo, crediting

all allegations in the complaint and drawing all reasonable

inferences favorable to the plaintiff. Scheuer v. Rhodes, 416

U.S. 232, 236 (1974); Rumford Pharmacy, Inc. v. East Providence,

970 F.2d 996, 997 (1st Cir. 1992). Similarly, a Rule 12(b)(1)

dismissal is reviewed de novo where, as here, the only issue is

the legal sufficiency of undisputed jurisdictional facts. See

2

Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir.

1982); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,

891 (3d Cir. 1977).

The complaint alleges that Heno sold Balcol Corporation

a 104-acre tract of real property in 1986, for which Balcol gave

Heno a promissory note secured by a first mortgage on the

undeveloped property. In September 1987, Balcol began to develop

the property, known as the Prospect Heights residential

subdivision, and obtained construction financing through Home

National Bank of Milford ("Bank"). Heno agreed to subordinate

his first mortgage to the Bank's construction loan mortgage. In

return for the release of Heno's second mortgage lien as each lot

was sold, Balcol and the Bank promised to release $19,125 from

the sale proceeds.

By April 1990, Balcol and Prospect Heights were exper-

iencing financial difficulties, and the three principal parties

entered into a recapitalization agreement. Heno agreed to accept

$5,000 (rather than $19,125) per lot for releasing his second

mortgage lien on the next nine lots sold by Balcol. Balcol and

the Bank agreed: (1) to transfer two additional lots to Heno

(Lots 82 and 111), free and clear of the Bank's first mortgage

liens, at the time Heno released his second mortgage lien on the

ninth lot; and (2) to deposit the net proceeds from the nine lots

in escrow with the Bank. The escrow monies were to be used

exclusively for immediate completion of roadwork in the project

andto defray Balcol's firstmortgage interest paymentsto the Bank.

3

Although Balcol conveyed Lots 82 and 111 to Heno on

May 2, 1990, the Bank did not release its first mortgage liens on

the lots. During April and May 1990, seven of the nine original

lots were sold by the Bank after Heno had released his second

mortgage liens. By June 1, 1990, more than $232,000 had been

deposited in escrow with the Bank pursuant to the

recapitalization agreement among Heno, Balcol, and the Bank.

Ultimately, the eighth and ninth lots were sold, and the net

proceeds, approximating $90,000, were deposited with FDIC.1 The

complaint alleges, hence we must assume, that $125,000 was to

have been devoted to roadwork at the project.2

On June 1, 1990, the Bank was declared insolvent and

FDIC was appointed receiver. At an unspecified later date, FDIC

applied the escrow monies toward the principal due on Balcol's

first mortgage loan account with the Bank, contrary to the

express terms of the recapitalization agreement. Heno's counsel

thereafter held discussions with FDIC, and was informed by Balcol

that FDIC would determine, after obtaining an appraisal of the

Prospect Heights project, whether to release the Bank's first

mortgage liens on Lots 82 and 111, the two additional lots at

1The complaint does not specify the date(s) of these sales,
but the proceeds were deposited with FDIC on or about October 1,
1990.

2At oral argument, Heno's counsel represented that the
roadwork was never performed.

4

issue on appeal. On December 13, 1990,3 and again on

February 19, 1991, Heno submitted written requests for action by

FDIC, but to no avail.4 Subsequently, FDIC foreclosed on the

Prospect Heights subdivision, including Lots 82 and 111. The

escrow monies were neither redeposited nor applied toward the

purposes agreed upon under the recapitalization agreement.

On October 18, 1991, Heno initiated the present action

to enjoin FDIC's sale of Lots 82 and 111 and to compel it to

redeposit the escrow monies previously misapplied to Balcol's

first mortgage with the Bank. The complaint demanded an

equitable accounting of the escrow monies, and compensatory

3Heno's December 13 letter specifically requested release of
the Bank's first mortgage liens on Lots 82 and 111 and served
"notice of [Heno's] contingent interest in [the escrow account]."
The letter went on to say:

Heno should receive either the lot releases or that
portion of the escrow account attributable to his
participation in the agreement. Under well established

fiduciary and equitable principles, if the FDIC is not

going to honor the purposes of the escrow account, that

portion of the escrow account attributable to Heno's

participation should be returned to him, and not used

by the Receiver to reduce Balcol's obligation.

(Emphasis added.) Heno's complaint demands an equitable
accounting of the escrow monies, and, accordingly, does not
specify the exact amount claimed. However, were Heno to
establish a repudiation of the recapitalization agreement, he
could be expected to assert a claim for the difference between
the $19,125 originally agreed upon, and the $5,000 he later
agreed to accept under the recapitalization agreement for releas-
ing his second mortgage liens on the nine lots sold by Balcol (or
approximately $127,000).

4The February 19, 1991, letter outlines, among other things,
the evidence relating to Heno's interest in the escrow monies and
certain subdivision lots, and makes reference to additional
letters not included in the appellate record.

5

relief for the loss occasioned by FDIC's refusal to release the

Bank's first mortgage liens on Lots 82 and 111. FDIC moved to

dismiss the claim for compensatory relief pursuant to Fed. R.

Civ. 12(b)(1), and the claim for injunctive relief pursuant to

Fed. R. Civ. P. 12(b)(6). The district court decided that it

lacked jurisdiction to consider the claim for compensatory relief

by virtue of 12 U.S.C. 1821(d)(13)(D)(i), and that injunctive

relief was precluded by 12 U.S.C. 1821(j).

B. The Original Panel Opinion

FIRREA 1821(d) regulates the filing, determination,

and payment of "claims" against "assets" of failed financial

institutions after FDIC has been appointed receiver. Subsections

1821(d)(3)(B) and (C) require FDIC to publish and mail notice of

liquidation to "any creditor shown on the institution's books"

and to allow at least ninety days for filing "claims." 12 U.S.C.

1821(d)(3)(B), (C). As FDIC points out, anyone with a "claim"

against the assets of the failed institution must submit an

administrative claim to FDIC within the prescribed statutory

period. Id. 1821(d)(5)(C). "[P]articipation in the

administrative claims review process [is] mandatory for all

parties asserting claims against failed institutions . . . ."

Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992). Failure to

participate in the administrative claims review process

(hereinafter "ACRP") is a "jurisdictional bar" to judicial

review. Id.; see also 12 U.S.C. 1821(d)(13)(D); FDIC v. Shain,

Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) ("Congress

6

expressly withdrew jurisdiction from all courts over any claim to

a failed bank's assets that are [sic] made outside the procedure

set forth in section 1821.").5 The subsection 1821(d) bar date

for filing administrative claims in the present case was

September 6, 1990. Since neither letter detailing Heno's

"claims" predated the bar date, see supra notes 3 and 4, the

district court ruled that Heno could no longer file a timely

administrative claim under subsection 1821(d), and that his

"claims" therefore were not entitled to judicial review.

Heno consistently has advanced two contentions on

appeal. First, he argues that neither FIRREA 1821(j), see

infra note 8, nor the ACRP established under subsection 1821(d),

applies to "non-creditors" including Heno who assert claims

to property, such as the alleged escrow account, which, though

held by the failed bank, is held "in trust" for third parties and

5Section 1821(d)(13)(D) provides:

(D) Limitation on judicial review

Except as otherwise provided in this subsection,
no court shall have jurisdiction over

(i) any claim or action for payment from, or
any action seeking a determination of
rights with respect to, the assets of
any depository institution for which the
Corporation has been appointed receiver,
including assets which the Corporation
may acquire from itself as such
receiver; or

(ii) any claim relating to any act or
omission of such institution or the
Corporation as receiver.

12 U.S.C. 1821(d)(13)(D).

7

is not a bank "asset."6 See, e.g., Purcell v. FDIC (In re

Purcell), 141 B.R. 480 (Bankr. D. Vt. 1992), aff'd, 150 B.R. 111,

113-15 (D. Vt. 1993). Second, and in the alternative, Heno

contends that his claim for compensatory relief should not have

been dismissed for failure to comply with the administrative

claim procedure established under subsection 1821(d).

The "task of interpretation begins with the text of the

statute itself, and statutory language must be accorded its

ordinary meaning." Telematics Int'l, Inc. v. NEMLC Leasing

Corp., 967 F.2d 703, 706 (1st Cir. 1992) (interpreting FIRREA

1821(j)) (emphasis added) (citations omitted). The original

panel opinion rejected FDIC's contention that Heno was required

to file an administrative claim before the bar date even though

the "claim" was grounded in a pre-receivership agreement with the

Bank and remained executory and unrepudiated both at the time of

FDIC's appointment and throughout the entire 90-day bar period

prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(i).

6At reargument, Heno urged that 1821(d)(13)(D) be ruled
wholly inapplicable for this reason, suggesting that the issue is
ripe for appellate review because it might affect any later
district court decision as to the scope of Heno's damages remedy.
We decline the invitation for two reasons. First, given FDIC's
blanket concession at reargument, the "asset" issue is no longer
essential to proper resolution of the question of appellate
jurisdiction. Second, the district court has yet to make
findings as to whether (or which) Bank records may have been
lost. On remand, therefore, Heno may confront a serious problem
of proof. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942);

see also 12 U.S.C. 1823(e). Thus, though the D'Oench Duhme

document requirement is not jurisdictional, and Heno will be
entitled to reasonable discovery, see generally Tuxedo Beach Club

Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635, 644 (D.N.J.

1990), he may not be able to overcome certain FDIC defenses which
could obviate any issue relating to damages.

8

As our opinion pointed out, FIRREA 1821(d) prescribes a single

exception to the pre-bar date filing requirement: it permits

late-filed claims only if "the claimant did not receive notice of

the appointment of the receiver in time to file such claim before

such date; and . . . such claim is filed in time to permit

payment of such claim." 12 U.S.C. 1821(d)(5)(C)(ii). Because

Heno no doubt like many others who assert claims arising out

of executory contracts with a failed bank concededly had

actual notice of FDIC's appointment, but held no assertable or

provable "claim" until after the bar date, the original panel

opinion reasoned that the ACRP established under subsection

1821(d) rationally could not have been intended to preclude

judicial review of post-receivership "claims" which arise after

the expiration of the 90-day administrative-claim filing period.

Rather, inasmuch as FDIC received two post-bar date requests from

Heno that it either affirm or repudiate the alleged reaffirmation

agreement within a "reasonable period following [FDIC's]

appointment," see 12 U.S.C. 1821(e)(2); supra notes 3 and 4, we

held Heno's claim for contract repudiation subject instead to the

more flexible time constraints established in FIRREA 1821(e).

See, e.g., Ceguerra v. Secretary of Health and Human Servs., 933

F.2d 735, 742 (9th Cir. 1991) ("[W]hen an administrative agency

interprets its governing statute to require such an absurd

result, we owe that interpretation no deference.")7

7Subsection 1821(e) provides, in pertinent part:

(e) Provisions relating to contracts entered into

9

C. The Petition for Rehearing

The petition for rehearing represents that but for the

fact that these claims were never considered claims based on

contract repudiation, FDIC would have invoked its extant internal

agency manual procedures for processing such post-bar date claims

(hereinafter: "internal manual procedures"). Accordingly, FDIC

urged remand to permit the district court to determine whether

Heno had complied with the internal manual procedures first

disclosed in FDIC's petition for rehearing. At reargument, FDIC

withdrew its request for remand, as unnecessary, after conceding

before appointment of conservator or receiver

(1) Authority to repudiate contracts

In addition to any other rights a conservator or
receiver may have, the conservator or receiver for any
insured depository institution may disaffirm or
repudiate any contract or lease

(A) to which such institution is a party;

(B) the performance of which the conservator or
receiver, in the conservator's or receiver's
discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the
conservator or receiver determines, in the
conservator's or receiver's discretion, will
promote the orderly administration of the
institution's affairs.

(2) Timing of repudiation

The conservator or receiver appointed for any
insured depository institution in accordance with
subsection (c) of this section shall determine whether
or not to exercise the rights of repudiation under this
subsection within a reasonable period following such
appointment.

12 U.S.C. 1821(e)(1), (2).

10

that Heno's detailed letter requests to FDIC in December 1990 and

February 1991, see supra notes 3 and 4, placed FDIC on notice of

the existence and nature of Heno's post-bar date claims well

within the time allotted under FDIC's internal manual procedures.

II

DISCUSSION

Given the concession that Heno's post-bar date claims

were timely filed under FDIC's internal manual procedures, the

one remaining question is whether judicial deference is due the

FDIC interpretation of subsections 1821(d)(5)(C)(ii) and

1821(d)(13) implicit in its internal manual procedures.8

The guidelines governing deference to an administering

agency's interpretation of its enabling statute are well settled:

First, always, is the question whether
Congress has directly spoken to the precise
question at issue. If the intent of Congress
is clear, that is the end of the matter; for

8We need not reconsider our earlier holding that the
district court lacked jurisdiction over Heno's claim for
injunctive relief, a claim expressly barred by 1821(j), which
provides in part:

Except as provided in this section, no court may take
any action, except at the request of the Board of
Directors by regulation or order, to restrain or affect

the exercise of powers or functions of the Corporation

as a conservator or a receiver.

12 U.S.C. 1821(j) (emphasis added); see Telematics Int'l, 967

F.2d at 707 ("holding that the district court lacks jurisdiction
to enjoin FDIC when FDIC is acting pursuant to its statutory

powers as receiver") (emphasis added).

11

the court, as well as the agency, must give
effect to the unambiguously expressed intent
of Congress. If, however, the court deter-
mines Congress has not directly addressed the
precise question at issue, the court does not
simply impose its own construction on the
statute, as would be necessary in the absence

of an administrative interpretation. Rather,

if the statute is silent or ambiguous with
respect to a specific issue, the question for
the court is whether the agency's answer is
based on a permissible construction of the
statute.

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,

467 U.S. 837, 842-43 (1984) (emphasis added). Under the

statutory interpretation implicit in its internal manual

procedures, FDIC construes the pivotal statutory bar-date

exception in subsection 1821(d)(5)(C)(ii) "the claimant did

not receive notice of the appointment of the receiver in time to

file such claim before [the bar] date" as permitting late

filing even by claimants who were on notice of FDIC's appointment

but could not file their claim because it did not come into

existence until after the bar date prescribed in subsections

1821(d)(3)(B)(i) and 1821(d)(5)(C)(i).

Although we concur in FDIC's candid assessment that its

proposed interpretation is far from the most natural reading of

subsection 1821(d)(5)(C)(ii) itself, we cannot say that it does

not represent a "permissible" reading of an ambiguous provision

viewed in the broader context of the statute as a whole under the

deferential standard required by Chevron. See Chevron, 467 U.S.

at 844 (agency construction is "permissible" unless "arbitrary,

capricious, or manifestly contrary to the statute") (emphasis

12

added). In this vein, neither we nor the parties have found any

other FIRREA provision governing agency treatment of claims that

do not arise until more than 90 days after the claimant has

notice of FDIC's appointment as receiver. Additionally, Congress

has delegated to FDIC the authority to "prescribe regulations

regarding the allowance or disallowance of claims by the receiver

and providing for administrative determination of claims and

review of such determination." 12 U.S.C. 1821(d)(4). The

extant FDIC internal manual procedures applicable to Heno's

claims comport with the FDIC's interpretation of subsection

1821(d)(5)(C)(ii), by explicitly dispensing with any requirement

intrinsic to the pre-bar date ACRP that holders of post-bar

date claims establish that they had no actual or constructive

notice of FDIC's appointment. Compare infra Appendix, Exhibits G

and 4-F with Exhibit 5-K.

Further, FDIC advances sound policy grounds for afford-

ing it an opportunity to evaluate post-bar date claims in the

first instance, including contract repudiation claims that do not

arise within the initial ninety-day period following notice of

its appointment as receiver. For one thing, a reasonably de-

signed and fairly administered post-bar date ACRP should optimize

prospects for expeditious resolution of these claims against

failed banks, make maximum use of FDIC's cumulative adminis-

trative expertise, and minimize burdensome litigation in the

federal courts. See Marquis, 965 F.2d at 1152 ("Quite plainly,

Congress intended the ACRP to provide a streamlined method for

13

resolving most claims against failed institutions in a prompt,

orderly fashion, without lengthy litigation.") (citing H.R. Rep.

No. 101-54(I), 101st Cong., 1st Sess., at 418-19 (1989)).

Lastly, absent a clear signal from Congress to the contrary, we

must credit an administering agency's reasoned interpretation of

its enabling statute. See Chevron, 467 U.S. at 843 n.11 (noting

that judicial deference is not dependent on a determination "that

the agency construction was the only one it permissibly could

have adopted to uphold the construction, or even the reading the

court would have reached if the question initially had arisen in

a judicial setting"); see also FDIC v. Philadelphia Gear Corp.,

476 U.S. 426, 439 (1986) (according Chevron deference to estab-

lished FDIC administrative practice, even though FDIC had not yet

reduced its statutory interpretation to "specific regulation");

cf. Colorado ex rel. Colorado State Banking Bd. v. Resolution

Trust Corp., 926 F.2d 931, 944 (10th Cir. 1991) ("[T]he RTC's

expert 'judgments about the way the real world works . . . are

precisely the kind that agencies are better equipped to make than

the courts.'") (citation omitted).

Since FDIC concedes that its treatment of Heno's

administrative requests that his alleged capitalization agreement

with the Bank be assumed by FDIC was tantamount to administrative

review under FDIC's internal manual procedures,9 and consequent-

9We expressly refrain from considering whether the adminis-
trative "mistake" conceded by FDIC lay in its failure to notify
Heno of its post-bar date ACRP within 30 days after it received
the December 1990 and February 1991 letters, i.e., after the

dates of FDIC's "discovery" of Heno's claims, or whether Heno's

14

ly that the district court had jurisdiction to review Heno's

claims, we have no occasion to determine the sufficiency of

FDIC's internal manual procedures. These matters must await some

future occasion when FDIC asserts a jurisdictional bar to judi-

cial review under FIRREA 1821(d)(13)(D) based on a claimant's

alleged failure to comply with the internal manual procedures.

At the same time, however, we note that though amply

invested with rulemaking authority to promulgate regulations

under subsection 1821(d)(4), FDIC has not done so, nor has it

taken reasonable steps to forewarn potential claimants of the

existence of its internal manual procedures for filing "late"

claims, thus contributing indispensably to the convoluted travel

of this case. Cf., e.g., Lawson v. FDIC, 3 F.3d 11, 14 (1st Cir.

1993) (noting that FDIC's "litigating style has some role in

[creating] confusion" in the district courts).10 Accordingly,

the FDIC internal manual procedures are appended to this opinion,

see infra Appendix, to lessen the likelihood that future claim-

ants experience a similar ordeal.

The district court order dismissing appellant's claims

for compensatory relief is vacated. The case is remanded to the

district court for further proceedings consistent with this

letters were proper administrative claims implicitly "disallowed"
when FDIC failed to respond within 180 days after their receipt.

10For example, as recently as reargument, FDIC continued to
urge a remand for administrative exhaustion, finally conceding
its "mistake" in failing to apply its internal manual procedures
to Heno's claim only when it was pressed to explain the utility
of such a remand.

15

opinion. In all other respects, the district court order is

affirmed. Finally, the present opinion is to be substituted for

our original opinion published at 996 F.2d 429. So ordered.

16

APPENDIX

EXHIBIT 1

Revised Exhibit 5-K.

FORM: NOTICE TO CREDITOR TO FILE A CLAIM; CREDITOR NOT AP-
PEARING IN BOOKS AND RECORDS AND/OR DISCOVERED AFTER
INITIAL PUBLICATION NOTICE AND [sic] HAS BEEN SENT

Use: Upon discovery of a claimant not appearing on the
institution's books and records, a similar notice is to
be sent within 30 days of discovery of creditor under
12 U.S.C. 1821(d)(3)(C)(ii). Use for claims which do
not appear on the institution's books and are discov-
ered after the appointment of the receiver and initial
publication notice and letters to creditors have al-
ready been sent. This form should also be utilized for
claims discovered after expiration of the bar date.

Complete Affidavits of Mailing, modified to indicate
creditor(s) discovered after closing and initial notic-
es.

[DATE]
[NAME OF CLAIMANT]
[ADDRESS]

SUBJECT: FIN - Name of Financial Institution
City, State - in receivership
NOTICE TO DISCOVERED CREDITOR OR CLAIMANT - PROOF OF

CLAIM

Dear Sir/Madam:

On [date of appointment], the [name of financial institution]
located at (full street address of main office] was closed by
[the supervisory authority], and the Federal Deposit Insurance
Corporation was appointed Receiver. Notice of the appointment of
the receiver has been published as required by law.

The Receiver has discovered that you may have a claim against the
[name of financial institution] or the Receiver.

By published notice, the Receiver has established [bar date] as
the last date for filing claims (the "bar date"). Under applica-
ble law, the Receiver must disallow claims which are not filed by
the bar date, except the Receiver may consider a claim filed

after the bar date if it is shown that the claimant did not
receive notice of the appointment of the receiver in time to file
such claim before the bar date, and such claim is filed in time
to permit payment of the claim.

i

It is within the sole discretion of the receiver whether to
consider claims which are filed after the bar date.

If you wish to file a claim, please complete and sign the en-
closed Proof of Claim Form. If your claim is for more than $500,
your claim form must be signed and sworn to before a notary
public. If you believe that you did not have notice of the
appointment of the receiver in time to file your claim by the bar
date, then you must also file a written statement specifying any
facts or circumstances demonstrating that you did not have
knowledge of the appointment of the Receiver in time to file your
claim by the bar date. Please include any documentation support-
ing your claim and your lack of knowledge of the appointment of
the Receiver.

MAILING YOUR CLAIM

Please mail your Proof of Claim form and written statement to:

Claims Agent
Federal Deposit Insurance Corporation
Receiver of Name of Failed Institution

c/o Federal Deposit Insurance Corporation
Address

City, State, Zip Code

HAND-DELIVERING YOUR CLAIM

You may hand-deliver your Proof of Claim form to the Claims Agent
at the address stated herein between 8:00 a.m. and 5:00 p.m. on
weekdays (excluding federal holidays).

[address for hand-delivery]

If you are filing your claim after the bar date, and you wish the
receiver to consider your claim, your Proof of Claim form and
written statement must be POSTMARKED OR HAND-DELIVERED TO (AND

RECEIVED BY) the Receiver no later than 90 days from the date or

post-mark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to
review and determine whether to allow or disallow your claim. If
the Receiver notifies you of the disallowance of your claim, and
you wish to seek judicial determination of your claim, you must
file a lawsuit (or continue any prior pending lawsuit) on your
claim, within 60 days after the later of the date or postmark of

any notice of disallowance, in the United States District Court

for the district in which [name of financial institution]'s
principal place of business was located or in the United States

ii

District Court for the District of Columbia or your claim will be
barred.

If you do not receive a notice of disallowance of your claim
within 180 days of its filing with the Receiver and the Receiver
and you have not agreed, in writing, to extend the initial 180
day determination period, your claim will be deemed disallowed,
pursuant to 12 U.S.C. 1821(d)(6)(A). If this occurs and you
wish to file suit on your claim to obtain judicial determination
of your claim, you must file your suit within 60 days after the

expiration of the 180 day period in the United States District

Court for the district in which [name of financial institution]'s
principal place of business was located or in the United States
District Court for the District of Columbia or your claim will be
barred.

The statutory provisions governing this claims process are found
in section 1821(d)(3)-(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at
[contact phone number].

Sincerely,

Claims Agent(s)
Federal Deposit Insurance Corporation,
as Receiver for [name of financial institution]

iii

Revised Exhibit 4-F. FDIC-DAS Settlement Procedures Manual
Sample

Disaffirmance Letter

Certified Mail
Return Receipt Requested

Date

Name
Address
City, State Zip Code

Subject: FIN #, Name of Closed Financial Institution
City, State - In Receivership
Account # (Reference, etc.)
CONTRACT DISAFFIRMANCE

To Whom It May Concern:

On [date of appointment] the [name of failed institution], in
[city and state), was closed by the [supervisory authority) and
the Federal Deposit Insurance Corporation was appointed Receiver
("Receiver"). Under applicable federal law the Receiver is
responsible for winding up the affairs of [name of failed insti-
tution) as quickly as possible. To achieve this goal the Receiv-
er has the right, pursuant to 12 U.S.C. 1821(e), to disaffirm
contractual obligations of the failed institution.

The purpose of this letter is to advise-you [sic] that the
Receiver has elected to disaffirm the above-referenced contract.

* Arrangements may be made to pick up any leased equipment by
contacting (Name) at (telephone number).

If you believe that you have any claim against the Receiver
resulting from this action, you may file a proof of claim with
the Receiver, using the enclosed form, and the Receiver must
receive it on or before [90 days] from the date or post-mark
[sic] of this letter, whichever is later. If your claim is for
more than $500, your claim form must be signed and sworn to
before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM
ON OR BEFORE [90 days] FROM THE DATE OR POST-MARK [SIC] OF THIS
LETTER, WHICHEVER IS LATER, WILL RESULT IN THE DISALLOWANCE OF
YOUR CLAIM.

Please mail your Proof of Claim form to:

Claims Agent

iv

Federal Deposit Insurance Corporation
Receiver of Name of Failed Institution

c/o Federal Deposit Insurance Corporation
Address

City State, Zip Code

Or you may hand-deliver your Proof of Claim form to the Claims
Agent at the address stated herein between 8:00 a.m. and 5:00
p.m. on weekdays (excluding federal holidays).

Your Proof of Claim form must be POSTMARKED OR HAND-DELIVERED TO

(AND RECEIVED BY) the Receiver on or before the [90 days] from

the date or post-mark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to
review and determine whether to allow or disallow your claim. If
the Receiver notifies you of the disallowance of your claim, and
you wish to seek a judicial determination of your claim, you must
file suit (or continue any prior pending suit) on your claim,
within 60 days after the later of the date or postmark of any

notice of disallowance, in the United States District Court for

the district in which [name of financial institution]'s principal
place of business was located or in the United States District
Court for the District of Columbia or your claim will be barred.

You are further advised that if you do not receive a notice of
disallowance of your claim within 180 days of its filing with the
Receiver and the Receiver and you have not agreed, in writing, to
extend the initial 180 day determination period, your claim will
be deemed disallowed, pursuant to 12 U.S.C. 1821(d)(6)(A). If
this occurs and you wish to file suit on your claim to obtain de
novo adjudication, you must file your suit within 60 days after
the expiration of the 180 day period in the United States Dis-
trict Court for the district in which [name of financial institu-
tion]'s principal place of business was located or in the United
States District Court for the District of Columbia or your claim
will be barred.

The statutory provisions governing this claims process are found
in section 1821(d)(3)-(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at
[contact phone number].

Very truly yours,

Name
Title
Federal Deposit Insurance Corporation,
as Receiver for [name of financial institution]

(Refer to site policy for signature guidelines)

v

cc: Refer to site policy for copy distribution guidelines.
*(Use only if applicable)

Revised Exhibit G. FDIC-DAS Settlement Procedures Manual Sample
Disaffirmance on Prepaid Contract Letter

Certified Mail
Return Receipt Requested

Date

Name
Address
City, State Zip Code

Subject: FIN #, Name of Closed Financial Institution
City, State - In Receivership
Account # (Reference, etc.)
CONTRACT DISAFFIRMANCE AND REQUEST FOR RETURN OF
PREPAID FUNDS

To Whom It May Concern:

On [date of appointment] the [name of failed institution], in
[city and state], was closed by the [supervisory authority] and
the Federal Deposit Insurance Corporation was appointed Receiver
("Receiver"). Under applicable federal law the Receiver is
responsible for winding up the affairs of [name of failed insti-
tution] as quickly as possible. To achieve this goal the Receiv-
er has the right, pursuant to 12 U.S.C. 1821(e), to disaffirm
contractual obligations of the failed institution.

The purpose of this letter is to advise you that the Receiver has
elected to disaffirm the above-referenced contract.

An examination of your prepaid contract revealed that there are
unused days remaining from the date of this notice until the

expiration of said contract. The number of days multiplied by $

per day, would indicate a credit of $ . It is requested that

you forward a check made payable to the FDIC, as Receiver of
(Name of closed Financial Institution), for the aforementioned
credit to:

Federal Deposit Insurance Corporation
Receiver of Name of Failed Institution

c/o Federal Deposit Insurance Corporation
Address

City, State Zip Code

Attention: [Name]

*Arrangements may be made to pick up any leased equipment by
contacting (Name) at (telephone number).

vi

If you believe that you have any claim against the Receiver
resulting from this action, you may file a proof of claim with
the Receiver, using the enclosed form, and the Receiver must
receive it on or before [90 days] from the date or post-mark
[sic] of this letter, whichever is later. If your claim is for
more than $500, your claim form must be signed and sworn to
before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM
ON OR BEFORE [90 days] FROM THE DATE OR POST-MARK [sic] OF THIS
LETTER, WHICHEVER IS LATER, WILL RESULT IN THE DISALLOWANCE OF
YOUR CLAIM.

Please mail your Proof of Claim form to:

Claims Agent
Federal Deposit Insurance Corporation
Receiver of Name of Failed Institution

c/o Federal Deposit Insurance Corporation
Address

City State, Zip Code

Or you may hand-deliver your Proof of Claim form to the Claims
Agent at the address stated herein between 8:00 a.m. and 5:00
p.m. on weekdays (excluding federal holidays).

Your Proof of Claim form must be POSTMARKED OR HAND-DELIVERED TO

(AND RECEIVED BY) the Receiver on or before the [90 days] from

the date or post-mark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to
review and determine whether to allow or disallow your claim. If
the Receiver notifies you of the disallowance of your claim, and
you wish to seek a judicial determination of your claim, you must
file suit (or continue any prior pending suit) on your claim,
within 60 days after the later of the date or postmark of any

notice of disallowance, in the United States District Court for

the district in which [name of financial institution]'s principal
place of business was located or in the United States District
Court for the District of Columbia or your claim will be barred.

You are further advised that if you do not receive a notice of
disallowance of your claim within 180 days of its filing with the
Receiver and the Receiver and you have not agreed, in writing, to
extend the initial 180 day determination period, your claim will
be deemed disallowed, pursuant to 12 U.S.C. 1821(d)(6)(A). If
this occurs and you wish to file suit on your claim to obtain de
novo adjudication, you must file your suit within 60 days after
the expiration of the 180 day period in the United States Dis-
trict Court for the district in which [name of financial institu-
tion]'s principal place of business was located or in the United
States District Court for the District of Columbia or your claim
will be barred.

vii

The statutory provisions governing this claims process are found
in section 1821(d)(3)-(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at
[contact phone number].

Very truly yours

Name
Title
Federal Deposit Insurance Corporation,
as Receiver for [name of financial institution]

(Refer to site policy for signature guidelines)

cc: Refer to site policy for copy distribution guidelines.
*(Use only if applicable)

*(Use only if applicable)

viii