Charles D. **ERBAFINA**, Domenic Erbafina, and Ronald Cerra, Individually and as Trustees of C & E Realty Trust,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver of New Bank of New England, N.A.**

Civ. A. No. 91–12111–RGS.

United States District Court,
D. Massachusetts.

May 11, 1994.

---

John P. Rauseo, Law Offices of John P. Rauseo, Lynnfield, MA, for plaintiffs.

Jeffrey R. Cohen, Wayne, Lazares & Chappell, Boston, MA, for defendants.

## MEMORANDUM AND DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

The plaintiffs, Charles Erbafina, Domenic Erbafina, and Ronald Cerra, individually and as trustees of the C & E Realty Trust executed a two year Note in the amount of $655,000 (the "Note") payable to Essexbank, a predecessor in interest to New Bank of New England ("NBNE"). Despite plaintiffs' continued, timely mortgage payments, NBNE made formal demand on the plaintiffs for payment in full.[1] Plaintiffs filed suit against NBNE claiming it was bound by Essexbank's commitment to the plaintiffs to renew the Note for an additional two year period so long as plaintiffs remained current with their obligations. Defendant Federal Deposit Insurance Corporation ("FDIC"), as the receiver of NBNE, moves for summary judgment contending that the *D'Oench, Duhme* doctrine bars plaintiffs from enforcing Essexbank's undertaking.

### BACKGROUND

In mid–1987, the plaintiffs began negotiations with Essexbank to consolidate and refinance outstanding mortgage-backed notes that the bank held on ten condominiums owned by the plaintiffs. As part of the negotiations, Essexbank acceded to language proposed by the plaintiffs regarding renewal or extension of the Note.[2]

On October 9, 1987, at the conclusion of the negotiations, plaintiffs executed a $655,-000 Note. Essexbank gave plaintiffs a Loan Commitment Letter outlining, among other terms, the criteria for a two year renewal or extension of the Note. This Loan Commit-

1. Although the record lacks specific evidence, I presume that the NBNE called the Note simply because, on its face, the Note became due some nine months prior to NBNE taking over the Bank of New England.

2. The draft of the Loan Commitment Letter offered by Essexbank to the plaintiffs on September 17, 1987, provided that renewal and extension of the Note was contingent on the Bank's review of the parties' relationship "in the context of the Borrower's credit history, deposit relationship and its loan portfolio and pricing. The Bank will then determine in its sole discretion

whether the note will be renewed for an additional two year term." See Exhibit B to Plaintiff's Opposition to FDIC's Motion for Summary Judgment.

After further negotiations, Essexbank agreed to the following language: "At the end of the loan term the Bank will review the banking relationship in the context of the Borrower's credit history, deposit relationship and if all are satisfactory the Bank will renew for an additional two year period at Essexbank base rate plus 1.25%." See Exhibit C to Plaintiff's Opposition to FDIC's Motion for Summary Judgment.

ment Letter was physically appended to the Note, and the Note referenced the Loan Commitment Letter.[3] The face of the Note states, however, that it is for a two year term and is due and payable on October 9, 1989.

The assets of Essexbank were purchased for value by the Bank of New England on August 28, 1989. On March 20, 1990, the plaintiffs requested that the Bank of New England renew the Note consistent with the renewal terms of Essexbank's Loan Commitment Letter. Without assenting to the request, the Bank of New England asked that the plaintiffs provide additional collateral to fully secure the Note in light of changing market conditions. Notably, the plaintiffs continued to make timely payments of principal and interest during this period. There were numerous conversations and negotiations between the plaintiffs and the Bank of New England regarding renewal of the Note. On January 6, 1991, the Bank of New England's assets were seized by the FDIC. The Bank of New England was succeeded by the bridge bank NBNE. NBNE made formal demand on the Note on July 26, 1990.

On April 3, 1991, plaintiffs filed this action in Suffolk Superior Court against NBNE seeking both equitable relief from the pending foreclosure sale and damages.[4] After the request for injunctive relief was denied, NBNE foreclosed on the mortgages and sold the secured property at public auction.[5] On July 13, 1991, NBNE was dissolved and the FDIC was appointed as its receiver. The FDIC removed the case to federal court and counterclaimed against the plaintiffs for breach of the Note and guaranty.

## DISCUSSION

The FDIC claims that the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), renders the Loan Commitment Letter unenforceable and moves for summary judgment. See also 12 U.S.C. § 1823(e). The plaintiffs contend that NBNE was obligated to renew the plaintiffs' Note pursuant to the renewal provisions of the Commitment Letter.[6] The plaintiffs claim that the *D'Oench, Duhme* doctrine is inapplicable here as all agreements in dispute are in writing, were continuously a part of the permanent records of the bank, were approved in writing by the appropriate bank boards or loan committees, and

---

3. The Note makes the following references to the Loan Commitment Letter.

 "Failure to pay any of the said installments within fifteen (15) days from the date when same becomes due shall subject the borrower to a delinquency charge of five percent (5%) of the principal and interest then owing; and further, in addition thereto, failure to pay any of the said installments within thirty (30) days from the date when it becomes due or to carry out the terms and conditions of the mortgage or the conditional assignment of leases and rents or the *loan commitment* outlining the terms of this loan dated September 21, 1987[,] shall make the whole of the balance of said principal sum immediately due and payable at the option of the holder hereof."
 "In the event of any default under this Note or a violation of any term, condition or provision of the Mortgage, Conditional Assignment of leases and Rents, the *Loan Commitment* outlining the terms of this loan dated September 21, 1987[,] or a change in the Trustees or the Schedule of Beneficial Interest of C & E Realty Trust, the holder hereof may at its option declare the full amount remaining unpaid hereunder to be immediately due and payable, and may thereupon or any time thereafter, demand, sue for and collect the same and proceed against any security."

See p. 2 of the Mortgage Note dated October 9, 1987.

4. While this case resided in the Massachusetts Superior Court, Judge Tuttle, and the Appeals Court on interlocutory appeal, correctly denied plaintiffs' request for injunctive relief. See *Telematics Intel, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 707 (1st Cir.1992) (courts lack jurisdiction to enjoin the FDIC when the FDIC is acting pursuant to its statutory powers as a receiver); *Botschoefter v. FDIC*, 33 Mass.App.Ct. 595, 597–601, 603 N.E.2d 235 (1992) (state court does not have subject matter jurisdiction once the FDIC is appointed a bank's receiver.) Judge Donovan, however, denied the FDIC's motion to dismiss. She held that the Bank had reneged on its promise to the plaintiffs regarding renewal of the Note.

5. The secured property was purchased for $295,-500.00. The outstanding principal balance owed by plaintiffs after deducting the sale proceeds is $187,160.99.

6. 12 U.S.C. § 1821(n)(1)(B)(i)(ii) requires a bridge bank to honor commitments made by a bank in default to creditworthy customers and not to interrupt or terminate adequately secured loans which are transferred by the defaulting banks.

**12**

were executed by the bank contemporaneously with the acquisition of the asset.

 Summary judgment is granted when, based upon the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op Society*, 3 F.3d 495, 497 (1st Cir.1993) To succeed, the moving party is required to show that there is no credible evidence supporting the non-moving party's position. *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990). If the moving party is successful, the burden then "shifts to the non-moving party to establish the existence of an issue of fact that could affect the outcome of the litigation. . . ." *Id.* The nonmoving party cannot rest upon mere allegations or conjecture. There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This requires a showing of an adducible, and disputed material fact that "has the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzales v. Triado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993).

 The *D'Oench, Duhme* doctrine precludes borrowers from using unrecorded or "secret" side agreements with a lender as a defense against the FDIC. The statute provides that:

"No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

The FDIC contends that the Loan Summary document contains language regarding an extension that is inconsistent with the Commitment Letter. The FDIC argues that, as the Loan Summary was executed ten days after the Loan Commitment Letter was issued, the terms of the Loan Summary are controlling. The FDIC also claims that under the *D'Oench, Duhme* doctrine the Loan Commitment Letter is unenforceable because it was drafted prior to, rather than contemporaneously with, the bulk of the loan documents.

 Although the Loan Summary, executed by the plaintiffs at the time they signed the Note, retained the Bank's original language committing the decision to grant an extension to the bank's sole discretion, the fact that the Loan Commitment Letter was also attached to, and referenced in the Note, creates a material disputed fact as to which of the two inconsistent documents the parties intended to be controlling. See *Nereida–Gonzales v. Triado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). There is nothing remarkable or legally significant in the fact that the Commitment Letter was negotiated and drafted a few days prior to the formal execution of the loan documents. The legally significant fact is that it was incorporated into the package of documents that memorialized the parties' final agreement. *D'Oench, Duhme* requires contemporaneity of execution, not creation. Accordingly, defendant's Motion for Summary Judgment is **DENIED.**

SO ORDERED.